IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RICHARD JOYNER, Individually, | : | No. 04-cv-489 |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | Judge John E. Jones III |
| DISTRICT OF COLUMBIA, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

## July 23, 2009

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Currently pending before this Court is a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment (the "Motion") filed by the Defendants on May 1, 2009. (Rec. Doc. 49). For the following reasons, the Motion shall be granted.

### PROCEDURAL HISTORY:

This case was originally filed in the United States District Court for the District of Columbia on August 16, 2000. (Rec. Doc. 1). The Plaintiff, Richard Joyner ("Plaintiff" or "Joyner"), as personal representative of the estate of his decedent father, Frank Joyner, who was an inmate in the United States Prison in

1

Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated this action when his father was allegedly murdered by fellow inmates in August of 1997. The Plaintiff originally asserted claims[1] only against the District of Columbia ("D.C.") and USP-Lewisburg. In November 2001, both Defendants moved for dismissal, with USP-Lewisburg also requesting a transfer of the case to the Middle District of Pennsylvania. Joyner v. District of Columbia 267 F. Supp. 2d 15 (D.D.C. 2003) ("Joyner I") (Walton, J.). The Plaintiff was granted leave to amend his complaint and did so by filing claims against several additional Defendants, including various D.C. officials; former Attorneys General Janet Reno ("Reno") and John Ashcroft ("Ashcroft"); Scott Dodrill ("Dodrill"), the warden at USP-Lewisburg; and several unnamed employees at USP-Lewisburg (the "unnamed Defendants").

In his order of June 2, 2003, Judge Walton dismissed D.C. and the named D.C. officials as Defendants because "the District of Columbia retained no discretion over where its prisoners convicted of felonies are placed and owe no duty to prisoners placed in facilities that it does not operate." Joyner I at 18. Subsequently, Judge Walton transferred the case to this district, explicitly referencing 28 U.S.C. § 1404(a) ("§ 1404(a)"), as he believed that such a

---

[1] The Plaintiff asserted claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) and under the Federal Torts Claims Act, 28 U.S.C. § 2671 et seq.

2

procedure was in the interest of justice and for the convenience of the parties. Id. at 21.

While the case was on our docket, the Plaintiff voluntarily dismissed his claims under the Federal Tort Claims Act, leaving the Bivens claims against Reno, Ashcroft, Dodrill, and the several unnamed Defendants as the only remaining claims.[2] We re-transferred the case to Judge Walton as it was our initial belief that the Middle District of Pennsylvania was an improper forum. However, Judge Walton ultimately transferred the case back to this Court, where it is presently situated.

On July 5, 2005, the Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Rec. Doc. 21). On November 5, 2008, we granted in part and denied in part that motion. (Rec. Doc. 43). Specifically, we granted the motion with respect to Defendants Reno, Ashcroft, and Dodrill to the extent that they are sued in their official capacities and denied the motion insofar as those Defendants were sued in their individual capacities. We also denied the motion with regard to the unnamed Defendants, as Plaintiff assured us that the names of the unknown parties would be revealed through discovery.

---

[2] Heretofore, any reference to "Defendants" is a reference to Reno, Ashcroft, Dodrill and the unnamed Defendants exclusively.

On May 1, 2009, after the close of discovery, Defendants filed the instant Motion. (Rec. Doc. 49). A brief in support thereof was filed on May 15, 2009 and, after numerous extensions were granted, a brief in opposition was lodged on June 29, 2009.[3] Plaintiff filed his reply brief on July 14, 2009. Accordingly, the Motion has been fully briefed and is ripe for disposition.

**STANDARD OF REVIEW:**[4]

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir.

---

[3] In the opposition brief, Plaintiff avers that the brief in support should be stricken because it was filed after the May 1, 2009 dispositive motion deadline established by this Court. In essence, the Plaintiff argues that in order to maintain compliance with the dispositive motion deadline, Defendants were obligated to file both the motion and supporting brief by that date. Since the brief in support was filed fifteen days after the deadline, Plaintiff contends that it should be stricken because it was filed past the deadline. Quite simply, we have never ascribed to the interpretation of the dispositive motion deadline posited by Plaintiff and therefore find her argument unavailing. The dispositive motion deadline is what its plain language represents it to be, a deadline for the filing of the dispositive *motion*, not a deadline for filing the *brief* in support of that motion. Since the instant Motion was filed on the deadline, Defendants are in compliance with the Court's order. Likewise, the brief in support was filed within the time frame established for doing so. See M.D. Pa. L.R. 7.5 (establishing a deadline of 10 days from the filing of the motion itself); Fed. R. Civ. P. 6(a) (establishing that the 10 day deadline is exclusive of weekends and holidays). Therefore, we will not strike either document from the record.

[4] Since the discovery period has closed, we will consider the Motion as one for summary judgment, using the standard applicable thereto in resolving same.

4

1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the

light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## STATEMENT OF MATERIAL FACTS:

As required by the aforesaid standard of review, the following factual recitation will be construed in the light most favorable to the non-moving party, the Plaintiff.[5]

---

[5] However, Middle District of Pennsylvania Local Rule 56 states:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs

Frank Joyner, an inmate at USP-Lewisburg, was stabbed to death by other inmates on August 28, 1997 in a gang-and-race related incident at the prison. (Rec. Doc. 23 ¶ 1). The acting Warden at the time of the incident, T.R. Sniezek ("Sniezek"),[6] declared that an investigation of the incident revealed that the inmates who planned the attack were the only individuals within the prison, prison officials and other inmates included, that had knowledge of the attack before it happened. (Rec. Doc. 50 Ex. L ¶ 6, 8). In the days following the attack, confidential informants inside the prison stated that the day before the attack an inmate affiliated with the Aryan Brotherhood had received a letter from a high ranking

---

set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. L.R. 56 ("L.R.56"). The Plaintiff's reply to the Defendants' statement of material facts is non-conforming, as it fails to provide individual responses to each numbered paragraph contained in the latter. Further, in responding to a select number of paragraphs in the Defendants' statement of facts, Plaintiff labels his responses numerically, instead of identifying them by referencing the number of the paragraph in the Defendants' statement of facts that it challenges. Further, Plaintiff often fails to cite to the record in support of the facts he posits. In light of Plaintiff's failure to conform to L.R. 56, we shall deem Defendants' statement of material facts admitted pursuant to the same rule.

[6] Sniezek was actually the Associate Warden at USP-Lewsiburg but was functioning as the acting Warden on the day in question because the Warden was on scheduled leave. (Rec. Doc. 50 Ex. L ¶ 1).

Aryan Brotherhood member that contained a coded message instructing the gang to act out against inmates from D.C. (Id. ¶ 6). The informants also confirmed that inmates outside the Aryan Brotherhood were not aware of the impendency of the attack. (Id.). After further investigation, several members of the Aryan Brotherhood were charged in California with racketeering and murder in connection with Frank Joyner's death. (Rec. Doc. 50 Ex. M). Plaintiff, the decedent's son, instituted the instant action, which at present contains only one viable claim, a deprivation of his father's Eighth Amendment rights in violation of 42 U.S.C. § 1983 ("§ 1983"), as asserted against Reno, Ashcroft, Dodrill, and the unnamed Defendants.[7]

Plaintiff avers that the Defendants failed to assure that the Lewisburg facility was staffed with personnel that were properly trained to manage and operate the facility.[8] (Compl. ¶ 15). He also contends that the Defendants failed to comply with the recognized standards of care applicable to the management and operation

---

[7] At the time of the events in question, the Defendants were situated as follows. Reno was the acting Attorney General for the United States of America. (Rec. Doc. 50 Ex. N). Ashcroft was a United States Senator from the state of Missouri. (Id. Ex. O). He eventually succeeded Reno as the seventy-ninth United States Attorney General, but this was not until 2001. (Id.). Dodrill was stationed in the Bureau of Prisons' Central Office in Washington, D.C. (Id. Ex. P). Dodrill eventually became Warden at USP-Lewisburg on January 13, 2002. (Id.).

[8] In particular, Plaintiff avers that the Defendants failed to assure that the facility complied with ordered mandates to reduce overcrowding and that they failed to employ adequate psychiatrists and maintain the facilities necessary to properly test and isolate dangerous prisoners. (Compl. ¶ 15).

of a prison facility and failed to maintain adequate security that would prevent inmate violence and procurement of weapons. (Id.). Plaintiff further asserts that not only did the Defendant have knowledge of long-standing gang violence and race wars at the prison and therefore should have known that a melee like the one in which Frank Joyner was killed could occur, they also failed to intervene to protect Frank Joyner once the prison melee began. (Id.).[9]

**DISCUSSION**:

At this juncture, it is worth reiterating that the only remaining claims are the Bivens claims against Defendants Reno, Ashcroft, Dodrill, and the several unnamed Defendants at USP-Lewisburg in their individual capacities.[10] Therefore,

---

[9] We note that the allegations contained in this paragraph are lodged in either the complaint, the brief in opposition to the instant Motion, or the Plaintiff's statement of facts. However, at no point does the Plaintiff direct us towards any record evidence to support these contentions. It is not the Court's responsibility to dredge through record evidence to find questions of material fact, Doebler's Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 (3d. Cir 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (citations omitted), and we decline any invitation to do so.

[10] In our November 5, 2008 Order, we denied Defendants' Motion to Dismiss insofar as it related to the Bivens claim against the unnamed Defendants because Plaintiff assured us that the discovery process would reveal the identities of the unnamed prison employees, which would then enable him to effect proper service of process on them. At this juncture, discovery has closed and Plaintiff candidly admits that he was unable to ascertain that information. Plaintiff opposes dismissal of the unnamed Defendants on the grounds that he is currently exploring alternative means to obtain information that would reveal their identities.

This case was initiated on August 16, 2000 in the United States District Court for the District of Columbia. To this date, almost nine years have passed, discovery has opened and closed, and Plaintiff has yet to ascertain the identities of certain officials at USP-Lewisburg. Absent compelling reasons, district courts may dismiss John Doe defendants when a plaintiff, after being granted a reasonable period of discovery, fails to identify them. Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if

9

the following discussion will be focused accordingly.

The instant Motion asserts that the remaining charges should be dismissed for the following reasons: (i) the Court lacks personal jurisdiction over the Defendants because they were not properly served; (ii) the Defendants lacked sufficient personal involvement in Frank Joyner's death to form a basis for liability; and (iii) the Defendants are entitled to qualified immunity.

Assuming, *arguendo*, that Reno, Ashcroft, and Dodrill were properly served with process and had sufficient personal involvement in Frank Joyner's death, two assumptions which we doubt, Plaintiff would still be unable to recover a judgment against Defendants because he has not provided evidence that Frank Joyner suffered a deprivation of his Eighth Amendment rights.

The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend VIII. Accordingly, the Eighth Amendment entails the right of an inmate to be protected from violence inflicted by other inmates. See Wilson v. Seiter, 501 U.S. 294, 303 (1991); Riley v. Jeffes, 777

---

discovery yields no identities."). In the case at bar, Plaintiff has failed to provide us with legitimate reasons that compel us to retain the unnamed parties. Indeed, beyond delaying the resolution of this case and wasting judicial resources, we are inclined to believe that providing Plaintiff with any further opportunities to obtain the identities of the unnamed Defendants would ultimately prove fruitless. Accordingly, we dismiss the unnamed Defendants from this action and grant the instant Motion to this extent.

10

F.2d 143 (3d Cir. 1985). Indeed, "When prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners and the level of violence becomes . . . high . . . it constitutes cruel and unusual punishment." Id. at 147. However, prison officials are not the absolute guarantor of inmate safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). To maintain an Eighth Amendment failure to protect claim, a plaintiff must establish that the prison officials acted with "deliberate indifference." Farmer, 511 U.S. at 832-34. Accordingly, "the plaintiff has the burden to show that defendant knew of, and disregarded, an excessive risk to his health or safety." Davis v. Muscarella, 615 F. Supp.2d 296, 301 (D. Del. 2009) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citations omitted)). "The knowledge requirement is subjective, 'meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.'" Davis, 615 F. Supp.2d. at 301 (quoting Farmer, 511 U.S. at 841).

In attempting to satisfy this requirement, Plaintiff avers that there "were long standing gang and race wars and insufficient security to protect Frank Joyner and other prisoners." (Rec. Doc. 58 ¶ 10). Further, Plaintiff claims that there was severe overcrowding at USP-Lewisburg and the staff at that the facilities testing and isolation of dangerous inmates was sub-standard. (See id. pp. 10-11). He

11

concludes, "When prison officials allow a penitentiary to remain overcrowded and allow [a] known violent gang like the Aryan Brotherhood to remain amongst the general population those prison official[s] are acting at least with deliberate indifference toward [the general population inmates.]" (Rec. Doc. 58 p. 11).

Unfortunately for Plaintiff, his case has been constructed on a foundation of sand. It consists of assumptions, accusations, and suppositions for which Plaintiff has developed no proof whatsoever. Plaintiff's bald conclusions concerning the conditions at USP-Lewisburg as they contributed to the homicide are not supported by expert reports of any kind, let alone via discovery.

Moreover, it is quite clear that neither Ashcroft or Dodrill could have been aware of the conditions and circumstances present at USP-Lewisburg at the time of Frank Joyner's death. After all, Ashcroft was at that point a United States Senator from Missouri and Dodrill held a position with the Bureau of Prisons' Central Office. Plaintiff has directed us towards no record evidence from which a reasonable jury could infer that either Ashcroft or Dodrill had any knowledge of any of the conditions at USP-Lewisburg, much less knowledge of an excessive risk to Frank Joyner or any other inmate incarcerated at the facility. If such evidence existed, Plaintiff has had more than ample time to discover it. He has not done so. Accordingly, we will grant the instant Motion in that regard.

With regard to Reno, while she was the United States Attorney General at the time of the incident in question, here again Plaintiff has again failed to adduce evidence from which a reasonable jury could infer that she knew of an excessive risk to Frank Joyner or any other inmate at USP-Lewisburg. Even if there were mandates directing USP-Lewisburg to rectify an overcrowding issue and even if USP-Lewisburg was not sufficiently testing and isolating dangerous inmates, claims which Plaintiff fails to substantiate, he has pointed to absolutely no evidence from which a reasonable jury could infer that Reno had knowledge of these shortcomings.[11] Further, there is no evidence that any prison officials at USP-Lewisburg, much less Reno, knew of the specific attack that resulted in Frank Joyner's death before it occurred. In fact, the only record evidence that has been brought to our attention indicates that no one at USP-Lewisburg, officials and inmates included, had foreknowledge of the attack except those that planned it.

---

[11] Moreover, even if there were shortcomings in testing and isolating inmates, there is no evidence that "proper" testing and isolation would have resulted in the removal of the assailants from the general prison population, thereby preventing the attack in which Frank Joyner was killed. Without this evidence, Plaintiff cannot establish that the assailants whom he asserts should have been removed from the general prison population actually posed an excessive threat of which prison officials were aware.

Plaintiff contends that Defendants knew of the existence of the "notoriously violent" Aryan Brotherhood at USP-Lewisburg and therefore should have screened the mail and decoded all messages transmitted to all prisoners associated with the gang. However, even if Defendants knew of the existence of the Aryan Brotherhood within USP-Lewisburg, there is no evidence that they knew that the inmate who received the decoded message instructing gang members to attack D.C. inmates was a member of the Aryan Brotherhood. Accordingly, Plaintiff cannot establish that any individual, much less Reno, ignored an excessive risk to inmate health by failing to screen and decode that prisoner's mail.

13

(Rec. Doc. 50 Ex. L ¶¶ 6, 8). In light of the foregoing, we believe that Plaintiff has failed to produced evidence from which a reasonable jury could infer that Reno had knowledge of either a generalized threat to the inmates at USP-Lewisburg or the specific threat that manifested itself in the attack in which Frank Joyner was killed. Consequently, Plaintiff cannot maintain her Eighth Amendment claim against Reno. We will grant the Motion to this extent. An appropriate Order will enter.